**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-7736

JOSE ANDRES OBANDO-SEGURA

Petitioner – Appellant,

v.

MERRICK B. GARLAND, Attorney General; ALEJANDRO N. MAYORKAS,
Secretary of the Department of Homeland Security; TAE D. JOHNSON, Acting
Director, U.S. Immigration and Customs Enforcement; DOROTHY
HERRERA−NILES, Field Office Director, Enforcement and Removal Operations,
U.S. Immigration and Customs Enforcement; CHARLES LEE, Assistant Field
Office Director, Enforcement and Removal Operations, U.S. Immigration Customs
Enforcement; DONNA BOUNDS, Warden of Immigration Facility, Worcester
County,

Respondents – Appellees.

--------------------

NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS
GUILD; LEGAL AID JUSTICE CENTER; AMERICAN IMMIGRATION
COUNCIL; HABEAS CORPUS AND FEDERAL LITIGATION SCHOLARS,

Amici Supporting Petitioner.

Appeal from the United States District Court for the District of Maryland, at Baltimore.
George L. Russell, III, District Judge.  (1:17-cv-03190-GLR)

Argued:  December 9, 2020                          Decided:  May 28, 2021

Before KEENAN and RICHARDSON, Circuit Judges, and TRAXLER, Senior Circuit Judge.

––––––––––––––––

Affirmed by published opinion. Judge Richardson wrote the majority opinion, in which Senior Judge Traxler joined. Judge Keenan wrote a dissenting opinion.

––––––––––––––––

**ARGUED:** Sean A. Mirski, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C., for Appellant. Jonathan Aaron Robbins, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Adina Appelbaum, Claudia R. Cubas, CAPITAL AREA IMMIGRANTS' RIGHTS (CAIR) COALITION, Washington, D.C.; R. Stanton Jones, Andrew T. Tutt, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C., for Appellant. Joseph H. Hunt, Assistant Attorney General, Anthony P. Nicastro, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. Sean Marotta, Jared Crum, Sarah Ruckriegle, HOGAN LOVELLS US LLP, Washington, D.C., for Amici Habeas Corpus and Federal Litigation Scholars. Sirine Shebaya, Cristina Velez, NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD, Washington, D.C.; Carmine D. Boccuzzi, Jr., Tapan R. Oza, Aaron Francis, CLEARY GOTTLIEB STEEN & HAMILTON LLP, New York, New York, for Amici National Immigration Project of the National Lawyers Guild, Legal Aid Justice Center, and American Immigration Council.

––––––––––––––––

RICHARDSON, Circuit Judge:

Jose Andres Obando-Segura prevailed on an application for a writ of habeas corpus seeking release from federal immigration detention. He now seeks to recover attorney's fees under the Equal Access to Justice Act. *See* 28 U.S.C. § 2412. We have held that the Act does not apply to a habeas proceeding seeking release from criminal detention. *See O'Brien v. Moore*, 395 F.3d 499, 508 (4th Cir. 2005). And today we hold that the same is true for habeas proceedings seeking release from civil detention. Because the Act does not provide a basis for Obando to recover attorney's fees, we affirm the district court's denial.

## I.  Background

### A.  Obando's detention and habeas application

Obando legally came to the United States in 2001 with a visa authorizing him to stay for six months. But he stayed well beyond his authorized time. Seven years after he arrived, he was convicted and sentenced to four years in California prison after he was found with a suitcase full of marijuana and a .40 caliber pistol.[1] After his prison term, the Department of Homeland Security began removal proceedings against him based on that conviction. An immigration judge found Obando removable, but he was not deported and was eventually released on bond in 2014.

Two years after his release, Obando was again found removable after he failed to appear at an immigration proceeding. But it turned out that Obando could not appear

---

[1] Obando has multiple other criminal convictions: selling marijuana in California, possessing a controlled substance in Nevada, invading a home with a firearm in Nevada, and conspiring to distribute marijuana in Maryland.

because he was incarcerated in Maryland for conspiring to distribute marijuana. So the immigration judge reopened the case. After that prison term, Obando was again placed in immigration custody, and again found removable. On appeal, the Board of Immigration Appeals remanded because Obando had submitted a U-visa application. The remand directed the immigration judge to consider granting Obando a continuance or an administrative closure. When Homeland Security continued to detain Obando, he applied for a writ of habeas corpus, requesting immediate release or a bond hearing. *See* 28 U.S.C. § 2241. The district court ordered a bond hearing before the immigration judge, who set Obando's bond at $5,000. Obando paid the bond and was again released.

## B. Obando's motion for attorney's fees

After being released on bond, Obando filed a motion for attorney's fees under the Equal Access to Justice Act. The Act requires the government to pay attorney's fees to a private party who prevails in "any civil action" against the United States, unless the government's position was substantially justified (or special circumstances make awarding attorney's fees unjust). 28 U.S.C. § 2412(d)(1)(A). The district court rejected his request, relying on our decision in *O'Brien*, 395 F.3d 499, where we held that a habeas proceeding is not a "civil action" under the Act. *Id*. at 508. Obando timely appealed and we have jurisdiction to review de novo the Act's interpretation. *See* 28 U.S.C. § 1291; *Broaddus v. U.S. Army Corps of Eng'rs*, 380 F.3d 162, 165 (4th Cir. 2004).

## II. Discussion

The Equal Access to Justice Act, Pub L. No. 96-481, § 204(a), 94 Stat. 2321, 2328 (1980), requires awarding attorney's fees incurred "in any civil action" brought by or

against the United States to a private "prevailing party," unless the United States' position "was substantially justified" or "special circumstances make an award unjust."[2] The district court held that Obando's habeas proceeding was not a "civil action" under the Act. We agree.

The law is often divided into simple categories: for example, criminal law, where the state imposes punishments, and civil law, which includes basically everything else. *Ex parte Tom Tong*, 108 U.S. 556, 559–60 (1883); *see also* BLACK'S LAW DICTIONARY 245 (6th ed. 1990) (defining "civil action" as "[i]n general, all types of actions other than criminal proceedings"). But habeas proceedings, for one, do not fit neatly into this dichotomy. The writ of habeas corpus is an ancient and important writ designed to safeguard individual freedom against unlawful custody. *Harris v. Nelson*, 394 U.S. 286, 290–91 (1969); THE FEDERALIST No. 83, at 562 (Alexander Hamilton) (J. Cooke ed., 1961) (noting that habeas corpus serves as a bulwark against "arbitrary methods of prosecuting pretended offenses, and arbitrary punishments upon arbitrary convictions"); 3 BLACKSTONE COMMENTARIES 131 (St. G. Tucker ed., 1803) (habeas is "the great and efficacious writ, in all manner of illegal confinement"). Indeed, despite Congress's power to alter most civil actions, the Constitution ensures that "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the

---

[2] 28 U.S.C. § 2412(d)(1)(A) ("[A] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.").

public Safety may require it." U.S. Const., Art. I, s 9, cl. 2. So the civil label, as applied to applications seeking the writ of habeas corpus, is "gross and inexact," as habeas corpus proceedings are "unique" and occupy a special place of their own in our system. *Harris*, 394 U.S. at 293–94. We must decide whether the writ of habeas corpus falls within the phrase "any civil action" as used in the Act. As we are to construe ambiguous waivers of sovereign immunity narrowly, *see Lane v. Pena*, 518 U.S. 187, 192 (1996), and because the nature of habeas corpus proceedings makes it ambiguous as to whether habeas proceedings fall within that statutory phrase, we find that phrase excludes them. This conclusion is required by precedent.

In *O'Brien*, 395 F.3d 499, we held that a habeas proceeding was not a "civil action" under the Act. In that case, a criminal defendant sought a writ of habeas corpus under § 2241 challenging his transfer from a halfway house to a federal prison camp. *Id.* at 500. He prevailed and sought attorney's fees under the Act. *Id.* at 502.

We began by recognizing that the Act's authorization of attorney's fees against the government was a waiver of sovereign immunity. *Id.* at 503. And a waiver of sovereign immunity requires an unequivocal statutory expression of congressional intent. *Id.* (quoting *United States v. Williams*, 514 U.S. 527, 531 (1995)). So framed, we asked whether the Act's attorney's-fee authorization in "civil actions" unambiguously covers habeas corpus proceedings. *Id.* If not, then the Act does not include the required clear statutory waiver and we could not award fees.

In concluding that the Act did not unambiguously cover habeas corpus proceedings, we first noted that the Act does not define "the term 'civil action,' and its terms do not

6

explicitly include or exclude habeas corpus proceedings." *Id.* at 504. We then acknowledged that "courts have, for a long time, categorized habeas cases as 'civil' in nature," rather than criminal. *Id.* But we found that classifying habeas proceedings under this criminal-civil dichotomy "uncomfortable." *Id.* So instead, we held that a proceeding following an application for the writ of habeas corpus was a "hybrid" proceeding, "unique" and in "a category unto itself"; that is, it failed to fit within the traditional paradigm. *Id.* at 504–06; *see also Harris*, 394 U.S. at 293–94 (Calling habeas proceedings "civil" "is gross and inexact. Essentially, the proceeding is unique."); *Smith v. Angelone*, 111 F.3d 1126, 1130 (4th Cir. 1997) ("Although a habeas proceeding is considered a civil action for some purposes . . . it is more accurately regarded as being *sui generis*.").

This conclusion—that habeas proceedings do not fit neatly within the criminal-civil dichotomy—was supported by cases interpreting similar statutory provisions. *O'Brien*, 395 F.3d at 506 (discussing, among other cases, *Schlanger v. Seamans*, 401 U.S. 487, 490 n. 4 (1971), which held that national service of process—authorized in "civil actions" against government officials under 28 U.S.C. § 1391(e)—was not authorized in a habeas proceeding brought by a military enlistee challenging his civil detention); *see also Smith*, 111 F.3d at 1131 (holding that "civil action," as used in the Prison Litigation Reform Act, does not include a habeas proceeding). And we noted that habeas corpus applications were resolved under a "streamlined" version of the Federal Rules of Civil Procedure. *O'Brien*, 395 F.3d at 505 (citing Fed. R. Civ. P. 81(a)(2); Rule 11 Governing § 2254 Cases). We thus concluded that "the circumstances where [a habeas proceeding] does not [ ] function [in a manner similar to a civil action] are sufficiently numerous to preclude the conclusion

7

that when a 'civil action' is regulated, the regulation necessarily include a habeas action." *Id.* at 507. As habeas corpus proceedings are more properly considered "hybrid" proceedings, we held that "the [Act] does not expressly authorize an award of attorneys fees to a prevailing party in a habeas corpus proceeding and [ ] the term 'civil action' does not unambiguously encompass habeas actions." *Id.* at 501, 505 (emphasis omitted).

Like O'Brien, Obando applied for a writ of habeas corpus under 28 U.S.C. § 2241. Thus, *O'Brien*'s reasoning seems to dictate that we deny Obando's request for attorney's fees. But Obando argues that we should not follow *O'Brien* here.

Obando first argues that *O'Brien* is limited to habeas applications seeking release from *criminal* detention. As his habeas application sought release from *civil* immigration detention, Obando argues we should depart from *O'Brien* and find the type of detention determines whether a habeas proceeding falls within the Act. While Obando identifies a factual distinction, it is a distinction without a difference under *O'Brien*'s reasoning.

*O'Brien* does note that a habeas proceeding assumes some of the criminal nature of the challenged criminal detention. *See, e.g., id.* at 505 ("[A] habeas proceeding reviews a criminal punishment with the potential of overturning it," and it therefore "necessarily assumes part of the underlying case's criminal nature.").[3] But we did not suggest that only

_____

[3] *O'Brien* also partially distinguished two out-of-circuit cases finding a habeas application seeking admission to this country was a "civil action" because they were civil immigration matters. *See O'Brien*, 395 F.3d at 507 (distinguishing *In re Hill*, 775 F.2d 1037 (9th Cir. 1985), and *Sotelo-Aquije v. Slattery*, 62 F.3d 54 (2d Cir. 1995), from the issue presented because the habeas proceedings related to civil immigration matters). But *O'Brien* then found that *Hill* and *Sotelo-Aquije* were not persuasive given that they conflicted with *Ewing v. Rodgers*, 826 F.2d 967 (10th Cir. 1987) and *Boudin v. Thomas*, (Continued)

habeas proceedings challenging criminal detention were hybrid proceedings. *Id.* We did not differentiate habeas applications seeking release from criminal detention and those seeking release from civil detention in *O'Brien*. *Id.* And this reflects what we find intuitive: the reason for the challenged detention does not change the essence or function of the habeas application used to seek release. *See Fay v. Noia*, 372 U.S. 391, 423–24 (1963) (explaining that the habeas corpus proceeding is "independen[t] . . . from what has gone before"). As we noted in *O'Brien*, the "essence of habeas corpus is an attack by a person in custody upon the legality of that custody" and "the traditional function of the writ is to secure release from illegal custody." 395 F.3d at 505 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). There are not "criminal habeas writs" and "non-criminal habeas writs": there are just writs for habeas corpus.

In sum, Obando's distinction fails because habeas proceedings do not change their nature based on the rationale for the underlying detention: there is just a single "type" of habeas proceeding. And *O'Brien* teaches us that habeas proceedings include a "criminal

---

732 F.2d 1107 (2d Cir. 1984). *O'Brien*, 395 F.3d at 508. *Ewing* and *Boudin*, like *O'Brien*, found that the Equal Access to Justice Act "does not unequivocally and unambiguously include a habeas proceeding." *O'Brien*, 395 F.3d at 507. Thus, *O'Brien* explained that to the extent that *Hill* and *Sotelo-Aquije* counseled against its holding, they were unpersuasive. But even if those cases were persuasive, they do not help Obando. Both cases arose from habeas applications filed by those *seeking admission* to this country. *Id.* at 507. And we now know that such applications do not fall within the writ of habeas corpus. *See Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1969–71 (2020); *Skinner v. Switzer*, 562 U.S. 521, 535, n. 13 (2011). Obando is using the habeas mechanism to challenge his *detention* as opposed to seeking admission to this country. So whatever the distinction we drew between those immigration cases and O'Brien's habeas application seeking release from his criminal detention, that distinction does not suggest Obando's habeas application falls under the Act.

aspect" and "a civil aspect." *Id.* Those dual aspects, as well as the differences between habeas proceedings and normal civil actions, render habeas proceedings as a whole "hybrid" proceedings and dictate that Obando's application for the writ of habeas corpus is not unambiguously a "civil action."

The Second Circuit has come to a different conclusion. *See Vacchio v. Ashcroft*, 404 F.3d 663, 667–72 (2d Cir. 2005) (distinguishing habeas proceedings seeking release from non-criminal, immigration-related detention from those seeking release from criminal detention). But it did so only by relying heavily on the Act's purposes—and specifically, how providing fees in habeas proceedings challenging criminal detention fails to advance the statutory purposes the Second Circuit identified while doing so for those challenging civil detention does further the statutory purposes it identified—to treat habeas proceedings differently based on the type of detention. *See Vacchio*, 404 F.3d at 668–70; *see also Hill*, 775 F.2d at 1040–41. *O'Brien* did not rely on the Act's purposes to find a waiver of sovereign immunity: instead, it relied on persuasive Supreme Court and Fourth Circuit precedent that enumerated why habeas proceedings are hybrid proceedings that are meaningfully different from civil actions. And we, like *O'Brien*, decline to delve into the legislative-purpose morass.

Obando is thus left to argue that the Supreme Court has so changed the principles for interpreting government waivers of sovereign immunity that we may ignore *O'Brien*. Obando grounds this argument in *Richlin Security Service Co. v. Chertoff*, 553 U.S. 571, 589 (2008), which explained that "[t]he sovereign immunity canon is just that—a canon of construction" that does not "displac[e] the other traditional tools of statutory construction."

10

But this directive matches how we applied the canon in *O'Brien*. We found "civil action" to be ambiguous after employing the traditional statutory-construction tools. 395 F.3d at 504, 508.[4] And that ambiguity required that we construe the term in favor of the sovereign. So *O'Brien*'s analysis fits *Richlin* and remains binding.

Even apart from *O'Brien*, Supreme Court precedent supports finding that a habeas proceeding seeking release from civil detention is not unambiguously a "civil action." In *Schlanger*, the Court held that the district court did not have jurisdiction over a habeas corpus application by a military enlistee challenging his civil detention because the custodian was not within the district's "reach." 401 U.S. at 490–91. This was because, in part, the custodian was not subject to service of process under 28 U.S.C. § 1391(e) (1964). *Id*. at 490 n.4. That statute permitted nationwide service of process in a "civil action." *Id*. But the Supreme Court held that "civil action" did not encompass a habeas proceeding, so the custodian could not be served. *Id*. The Court found that the "legislative history of that section was barren of any indication that Congress" intended the section to apply to habeas

---

[4] We reject Obando's argument that we must consider legislative history before finding a statute's alleged sovereign-immunity waiver ambiguous. *See Lane*, 518 U.S. at 192 ("A statute's legislative history cannot supply a waiver [of sovereign immunity] that does not appear clearly in any statutory text."); *see also Sebelius v. Cloer*, 569 U.S. 369, 380 (2013) (looking only to the text to find the statute was unambiguous); *FAA v. Cooper*, 566 U.S. 284, 291 (2012) (requiring that "the scope of Congress' waiver be *clearly discernable* from *the statutory text* in light of traditional interpretive tools" (emphasis added)); *Richlin*, 553 U.S. at 583–84, 590 (concluding that the statute is unambiguous based on its text, and rejecting arguments that legislative history changes that fact).

proceedings. *Id.* [5] The Court then held the statute inapplicable to the petitioner's habeas application even "[t]hough habeas corpus is technically 'civil.'" *Id.* In doing so, the Court relied on the fact that habeas proceedings are "not automatically subject to all the rules governing ordinary civil actions." *Id.* (citing *Harris*, 394 U.S. 286). And, as here, the petitioner's habeas application sought release from civil detention: he was a military enlistee being held under his enlistment contract. *Id.* at 488. *Schlanger* thus found that a habeas proceeding seeking release from civil detention was not a "civil action."

Obando contends that *Schlanger* is inapplicable for two reasons. Neither is persuasive. First, he argues that § 1391(e)—the service-of-process statute—used the phrase "civil action" while the Equal Access to Justice Act applies to "*any* civil action." Opening Br. at 27–28; Oral Arg. at 43:51–43:58. He claims that the word "any" requires that the term "civil action" be read expansively. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997).[6] But whatever we think of the possibility that the term "any" can sufficiently

---

[5] Though *Schlanger* considered § 1391(e)'s legislative history, we need not do so. We are construing a congressional waiver of sovereign immunity, which must "appear clearly in any statutory text." *Lane*, 518 U.S. at 192.

[6] Obando cites *Hilborn v. United States*, 163 U.S. 342 (1896) as holding that "any civil action" includes habeas proceedings. We disagree. *Hilborn* dealt with a statute that enumerated the duties of a district attorney as, among other things, "prosecut[ing] . . . all civil actions in which the United States [is] concerned." *Id.* at 345. The Court found that the district attorney was acting within his duties in defending against the application for the writ of habeas corpus. *Id.* But the only argument made was that the district attorney was acting in *defense*, rather than as a *prosecutor*, for the United States, and therefore did not meet the statutory language "it shall be the duty of every district attorney to *prosecute* . . . all civil actions." *Id.* (emphasis added). The Court rejected this argument based on *Smith v. United States*, 158 U.S. 346 (1895), which held that the statute should not be "interpreted in any technical sense, but should be construed as covering any case in which (Continued)

12

disambiguate the term "civil action," that argument cannot survive *O'Brien*. For even if "any" could disambiguate the statute, it cannot do so for habeas cases premised on a civil detention while stopping short of habeas cases premised on a criminal detention. *O'Brien*'s reasoning and reliance on Supreme Court cases discussing habeas proceedings seeking relief from both criminal and civil detention made clear that the "two types" of habeas proceedings rise and fall together. *See* 395 F.3d at 500, 504–05.

Second, during oral arguments, Obando's counsel tried to dismiss *Schlanger*'s discussion of § 1391(e) as dicta. We disagree with that characterization: *Schlanger*'s holding depended on its resolution of the statute's scope. And our own precedent relies on *Schlanger* for this very discussion. *O'Brien*, 395 F.3d at 506.

Obando's attempts to distinguish and minimize the importance of *Schlanger* are ultimately unavailing. *Schlanger'*s teaching that habeas proceedings seeking release from civil detention are not "civil actions" remains persuasive and binding.

*          *          *

Courts sometimes call habeas corpus proceedings "civil actions." Yet they are actually unique, hybrid proceedings. And that uniqueness makes it ambiguous whether habeas proceedings fall under "any civil action" with the Equal Access to Justice Act. We recognized that ambiguity in *O'Brien*, and it does not disappear when one looks to the type

---

the district attorneys are employed to prosecute the interests of the government in any civil action, whether such interest be the subject of attack or defense." *Smith*, 158 U.S. at 353–54. Unlike *Schlanger*, neither case addressed whether a habeas proceeding was a civil action. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

of detention a habeas applicant seeks release from.  So taking that ambiguity alongside our obligation to construe the waiver of sovereign immunity narrowly, we find that Obando's application for a writ of habeas corpus does not fall within the Act's reach.  The district court's order denying Obando attorney's fees under the Act is therefore

AFFIRMED.

BARBARA MILANO KEENAN, Circuit Judge, dissenting:

I write separately because, in my view, Obando-Segura's habeas action challenging his civil immigration detention plainly qualifies as "any civil action" under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A). Unlike *O'Brien*, in which the petitioner was in custody pursuant to a criminal judgment, *O'Brien v. Moore*, 395 F.3d 499, 501 (4th Cir. 2005), Obando-Segura does not seek to attack a criminal detention, sentence, or conviction. His habeas action thus does not "have both criminal and civil aspects," *id.* at 505, but instead is purely civil in nature. I therefore would apply long-standing Supreme Court precedent categorizing habeas proceedings as civil matters and hold that the EAJA applies to Obando-Segura's petition brought under 28 U.S.C. § 2241.

Notably, no other circuit has adopted the majority's position in the context of immigration habeas actions. Rather, the majority's novel interpretation of the EAJA creates a circuit split with the approaches taken by the Second and Ninth Circuits. *See Vacchio v. Ashcroft*, 404 F.3d 663, 667-72 (2d Cir. 2005); *In re Hill*, 775 F.2d 1037, 1040-41 (9th Cir. 1985). This disagreement with our sister circuits is unnecessary, because the statutory text of the EAJA is clear. That text creates only one categorical exception for purely civil actions, namely, for "cases sounding in tort," and does not exclude from its coverage purely civil habeas actions challenging civil immigration detention. 28 U.S.C. § 2412(d)(1)(A).

The Supreme Court, while recognizing the "unique" features of habeas corpus, has defined habeas proceedings as civil in nature for over a century. *See Hilborn v. United States*, 163 U.S. 342, 344-46 (1896); *Harris v. Nelson*, 394 U.S. 286, 293-94 (1969); *Hilton*

15

*v. Braunskill*, 481 U.S. 770, 776 (1987); *Mayle v. Felix*, 545 U.S. 644, 654 n.4 (2005); *Banister v. Davis*, 140 S. Ct. 1698, 1702-03 (2020). Nothing in the text of the EAJA suggests that Congress departed from this established understanding with respect to habeas challenges to immigration detention. To the contrary, the statutory text clearly signals Congress' intent to encompass actions attacking civil detention. I therefore would not read into the EAJA an implicit exception excluding such habeas actions from EAJA coverage. *See Harley v. Wilkinson*, 988 F.3d 766, 771 (4th Cir. 2021) (declining to read into a statute an exception not expressly included by Congress).

Two aspects of the EAJA's text compel this conclusion. First, the EAJA by its terms applies to "*any* civil action (*other than cases sounding in tort*)." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). By qualifying the term "civil action" with the word "any," Congress plainly sought to give the EAJA expansive reach. *See Vacchio*, 404 F.3d at 667 ("On its face, the term 'any civil action' would seem to include habeas petitions, which ordinarily qualify as civil actions."). Thus, although the "civil" classification of habeas cases may be "gross and inexact," *Harris*, 394 U.S. at 293-94, Congress expressed its intent for the EAJA to apply to the broadest possible range of civil cases by choosing the word "any" to modify the term "civil action."[1]

---

[1] I am not persuaded by the majority's reliance on a brief footnote in the Supreme Court's decision in *Schlanger v. Seamans*, 401 U.S. 487, 490 n.4 (1971). It is undisputed that habeas actions are "not automatically subject to all the rules governing ordinary civil actions." *Id.* (explaining that the nationwide service of process rule in 28 U.S.C. § 1391(e) is not applicable to habeas cases); *see also Harris*, 394 U.S. at 290, 292-98 (holding that Federal Rule of Civil Procedure 33 regarding interrogatories is not applicable to habeas cases). The Supreme Court's recognition that different litigation rules sometimes apply to (Continued)

Second, Congress has demonstrated its intent to place another category of civil actions outside the scope of the EAJA, by explicitly excluding tort actions from the reach of the statute. 28 U.S.C. § 2412(d)(1)(A). Given this express exception, we cannot assume that Congress also intended *implicitly* to exclude any other category of purely civil cases from the scope of the statute. *See United States v. Smith*, 499 U.S. 160, 167 (1991) ("[When] Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." (citation omitted)). In my view, the textual exception for tort actions, the expansive statutory phrase "*any* civil action," and the decades-long precedent defining habeas actions as civil in nature, mandate the conclusion that the EAJA unambiguously includes habeas challenges to civil immigration detention.

Our decision in *O'Brien* does not alter this analysis. Our holding in that case was based on the conclusion that habeas actions challenging *criminal* detentions are not "civil actions" within the meaning of the EAJA but, instead, are hybrid criminal-civil actions. We explained:

> [T]o the extent that a habeas proceeding reviews a criminal punishment with the potential of overturning it, the habeas proceeding necessarily assumes part of the underlying case's criminal nature in the same sense, for instance, that a declaratory judgment action takes on aspects of an underlying breach-of-contract case.

habeas actions has little or no bearing on our task here, which is to determine whether the phrase "any civil action" in the EAJA encompasses purely civil immigration habeas cases.

17

*O'Brien*, 395 F.3d at 505. We therefore concluded that when a statute applies to "a 'civil action,' . . . it does not necessarily follow that [the statute] also regulates a habeas proceeding." *Id.* at 505-06. We acknowledged that other circuits had reached the opposite result in habeas cases involving immigration, but concluded that O'Brien's case was "readily distinguishable" because he presented "a classic habeas action" challenging an underlying criminal detention. *Id.* at 507-08.

In contrast, here, it is well-established that immigration detention is civil in nature. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (explaining that removal proceedings and immigration detention "are civil, not criminal, and we assume that they are nonpunitive in purpose and effect"). And, as discussed above, the Supreme Court long has characterized habeas corpus as a civil remedy. Obando-Segura's habeas challenge to his civil immigration detention has no "criminal aspect" whatsoever. *O'Brien*, 395 F.3d at 505. At the time he filed his petition, Obando-Segura was not confined pursuant to a criminal judgment, but instead was detained in the custody of Immigration and Customs Enforcement.[2] Therefore, there is no basis on which to classify a civil habeas action challenging civil immigration detention as a "hybrid" criminal-civil proceeding excluded from the broad category of "any civil action." *See Vacchio*, 404 F.3d at 672 (explaining that an immigration habeas petition "is both a civil action in its own right, and [] has its

---

[2] Immigration authorities detained Obando-Segura pursuant to 8 U.S.C. § 1226(c), which provides for the detention of certain non-citizens pending the conclusion of their removal proceedings.

roots in a civil action"); *cf. Hill*, 775 F.2d at 1040-41 ("[W]e must look to the substance of the remedy sought, not the labels attached to the claim," to determine whether the EAJA applies). Because *O'Brien* did not purport to decide the applicability of the EAJA to immigration habeas actions, the holding in *O'Brien* is inapplicable here.[3] *See Vacchio*, 404 F.3d at 668-72, 671 n.8 (limiting prior precedent of *Boudin v. Thomas*, 732 F.2d 1107 (2d Cir. 1984), which had declined to apply the EAJA to criminal habeas actions, and holding that the EAJA encompasses habeas challenges to immigration detention); *see also Hill*, 775 F.2d at 1040-41 (similarly distinguishing *Boudin* in the context of an immigration habeas action).

For these reasons, I would vacate the district court's judgment, and remand for the court to determine under the EAJA whether the government's position in the civil immigration proceeding against Obando-Segura was "substantially justified" or whether "special circumstances make an award [of attorneys' fees and other expenses] unjust." 28 U.S.C. § 2412(d)(1)(A).

---

[3] To the extent that our decision in *O'Brien* contains broad language regarding the EAJA's applicability to habeas actions, I read our holding and reasoning as applying only to the factual context in which the case arose.

19